# CASES ARGUED AND DETERMINED.

# SUPREME COURT OF MISSISSIPPI

## AT THE

## MARCH TERM, 1924.

HERRING *v.* STATE.

[99 So. 270.   No. 23826.]

(Division B.   March 10, 1924.)

HOMICIDE.  *Instruction on assault with intent to kill eliminating felonious intent held erroneous.*

> In a prosecution for assault and battery with intent to kill and murder under section 1043, Code of 1906 (section 771, Hemingway's Code), the intent to kill is the gist of the offense, and that which raises it from a misdemeanor to a felony; and, where an instruction undertakes to specify what will justify a conviction, it cannot omit or eliminate from the consideration of the jury the felonious intent, and a conviction predicated upon an instruction which omits this vital element of the offense will be reversed.

APPEAL from circuit court of Jones county.

HON. R. S. HALL, Judge.

Proceeding between Dan Herring and the state.  From the judgment rendered, the former appeals.  Reversed and remanded.

*Pack & Pack,* for appellant.

505

The trial court erred in granting Instruction No. 2 for the state. This instruction is fatally erroneous. The instuction was highly prejudicial to the defendant in that it took no notice whatever of the essential elements of the crime charged. We submit that appellant might have been guilty of all the acts charged in this instruction, and still not have been guilty of the crime charged in the indictment. This instruction tells the jury that if, after the first difficulty, appellant and Odom "had another difficulty in which defendant cut and wounded the prosecuting witness, Prent Odom, then you must find defendant guilty as charged, unless you further believe beyond a reasonable doubt from the evidence that defendant was not acting in his necessary self-defense."

There are three essential elements in the crime charged in the indictment: First, appellant must have acted of his malice aforethought; Second, there must have been a deliberate design to effect the death of Odom; Third, the weapon used must have been a deadly weapon.

It will be noticed that the above instruction does not recognize any of these elements. It says nothing whatever about the element of malice, and nothing about the intent to kill and murder. Certainly it cannot be denied that these two elements must have been present before there could be any crime.

As to the necessity of the element of malice, we find the rule clearly stated in 21 Cyc. 782. As to the necessity of the intent to kill and murder, the rule is clearly laid down in 21 Cyc. 782. 13 R. C. L. 799, announces the principle in these words: "The authorities are agreed on the general proposition that in a prosecution for assault with intent to kill or murder, the specific intent to take life is the gist of the offense. This intent must be charged in the indictment, and must be proved as charged. The jury should be instructed that before they can return a verdict of guilty, they must be convinced from the evidence that the accused entertained a design to kill."

If it be argued that the existence of malice afore-thought, and of the intent to kill are presumed from the use of a deadly weapon, we answer that this instruction says nothing whatever about the weapon used, that is, whether it was a deadly weapon or not. Certainly this proposition should have been included in the instruction. One of the clearest expressions of our court upon this subject is found in *Hibbler* v. *The State,* 87 Miss. 362, 39 So. 896.

*Harry M. Bryan,* Assistant Attorney-General, for the state.

Instruction No. 2, for the state, while possibly loosely drawn, was not prejudicial to the defendant when read with all the instructions given for the state and defend-ant, and could not possibly constitute reversible error. It was not necessary for the court to include in each of its instructions every constituent element of the crime. This requirement would, as a general rule, so burden the mass of instructions in criminal cases as to render them not only well-nigh unintelligible, but would practically guarantee that juries would not read them, especially if many instructions are asked for the state and defense.

If the instruction complained of was not full and com-plete, it was most certainly cured by the instruction granted by the court for the defendant. Instructions No. 4, 6, and 8 given for the defendant are models of clear-ness and nicety of language and expression. They fully protected the defendant from any possible attempt by the jury to convict simply because they believed beyond a reasonable doubt that the defendant cut and wounded the prosecuting witness.

The test is, of course, whether or not the giving of a particular instruction worked to the prejudice of the defendant. It was held in *Turnage* v. *Mississippi,* 1 Miss. Dec. 532, that a verdict which is manifestly right will not

be disturbed because an instruction given for the state is inaccurately drawn, when an instruction given for the defendant clearly states the same proposition.

It was held in *Rosamond* v. *State,* 1 Miss. 122, that even a palpably erroneous instruction for the state, when taken alone, will not cause reversal when the instructions given for the defendant give him the benefit of the principles of law he is entitled to.‌ See, also, *Sullivan* v. *State,* 46 So. 248; *Adams* v. *State,* 24 So. 386; *Hemingway* v. *State,* 68 Miss. 371; *Arbuckle* v. *State,* 31 So. 440.

We respectfully submit that there is no reversible error in the record.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted for assault and battery with intent to kill and murder one Prent Odom. The facts surrounding the transaction are that, some two hours before the last fight in which appellant severely cut Odom, Odom was engaged in spanking a boy, in which Herring interfered. It does not appear clearly from Odom's testimony whether he was fighting the boy, or just playing with him, but it does appear from appellant's testimony and from the boy's testimony that he was fighting him. At this time appellant came upon the scene and ordered Odom to desist, telling him that if he wanted to fight to fight a man. Odom struck the appellant, and cut him in the leg with a knife which he had in his hand during the first fight. Appellant thereupon ran into a house, and Odom obtained a gun and came out of the house and threatened the appellant, but the gun was finally taken from Odom by some of the women, either the boy's mother or Odom's mother, and carried into Odom's house. About two hours after this transaction one of the women, either the boy's mother or the appellant's wife went to Odom and asked him to make friends with the appellant; that the appellant was not

mad; and he agreed to do so, and the appellant and Odom met in Odom's back yard about halfway the distance between the place where the boy lived and where Odom lived, and shook hands, and appellant asked Odom to go for a doctor to dress the wound that Odom had inflicted upon appellant's leg. Thereupon a second fight occurred, and the testimony is conflicting about how it happened. Odom's testimony is that when they made friends and shook hands in the back yard that he (Odom) turned and walked into his house, and as he' stepped upon the door sill appellant cut him in the arm, rendering the arm useless; that he fell down upon the step with the appellant upon his back, cut him in the back, and called to his mother to bring him his gun, whereupon the appellant turned and ran away. 'Appellant's version is that Odom again assaulted him after shaking hands, cut a gash above his eye, and one upon his wrist; that they grappled, and that he cut Odom in the back reaching over as that was the only way he could cut him in the grappling situation to protect himself from the assault of Odom. The testimony of the other witnesses as to what happened at the time is not very clear, but it seems from the testimony of the women that they were in a fight.

The court instructed the jury for the state generally that, if they believed "from the evidence beyond a reasonable doubt that Dan Herring did willfully, unlawfully, feloniously, and of malice aforethought upon the body of Prent Odom, a human being, an assault make with a deadly weapon, to-wit, a pocket knife, with the intent then and there the said Prent Odom to kill and murder as charged in the indictment, then it is your sworn' duty to find the defendant guilty as charged." A second instruction reads as follows:

"You are further instructed for the state that if you believe from the evidence in this case beyond a reasonable doubt that defendant and the prosecuting witness, Prent Odom, had a difficulty in which Prent Odom cut and

stabbed defendant, and shortly afterwards they met and shook hands to make friends, and immediately afterwards had another difficulty in which defendant cut and wounded the prosecuting witness, Prent Odom, then you must find defendant guilty as charged, unless you further believe beyond a reasonable doubt from the evidence that defendant was not acting in his necessary self-defense.''

Appellant insists that this instruction is reversible error, while the state contends that it must be read in connection with the first instruction, and that when so read it is not reversible error.

In our opinion the last instruction set out is reversible error because it fails to embrace the hypothesis that the appellant intended to kill Odom. It also omits the qualification that the wound was inflicted with a deadly weapon. Before the appellant can be convicted of the offense charged predicated entirely upon the second fight, the jury must be told that the appellant must have intended at the time to kill. The gist of the offense here charged is the felonious intent to kill. It is this intent to kill that raises the grade of the offense from a misdemeanor to a felony. It may have been the appellant was not justified in the cutting, but that he did not intend to kill. It is not sufficient to say that the appellant had a difficulty with Odom and cut Odom, in the difficulty while not acting in necessary self-defense. It is possible for a man to cut another with a knife while not acting in self-defense and still not be guilty of intention to kill. See annotation to section 771, Hemingway's Code (section 1043, Code of 1906).

*Reversed and remanded.*